Filed 7/28/26  P. v. Torres CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALBERTO TORRES,<br><br>    Defendant and Appellant. | F088896<br><br>(Super. Ct. No. VCF435765)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Erin J. Radekin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Before Meehan, Acting P. J., Snauffer, J. and Harrell, J.

-ooOoo-

Defendant Alberto Torres was convicted by a jury of assault by means of force likely to produce great bodily injury, and the trial court sentenced him to three years in prison. Torres contends the trial court violated his Sixth Amendment right to self-representation by denying his *Faretta*[1] motion based on an expert's opinion that he was not competent to represent himself. We conclude substantial evidence supports the trial court's ruling and affirm the judgment.

## STATEMENT OF THE CASE

On December 12, 2023, Torres was charged in an information with felony assault by means of force likely to produce great bodily injury (Pen. Code,[2] § 245, subd. (a)(4); count 1) and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)(1); count 2). Count 2 was later dismissed.

Torres was represented by counsel at trial. In October 2024, a jury convicted Torres on count 1, and in a bifurcated hearing the jury found true a special allegation that Torres's prior convictions as an adult are numerous or of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)). The trial court sentenced Torres to the middle term of three years on count 1.

## FACTS

J.B. went to a laundromat in Orosi on November 27, 2022, at around 4:00 a.m. to wash his clothes. He put his clothes into the washer and went to the nearby convenience store to get quarters for the machine. As he walked into the store, Torres held the door open for him. J.B. had never seen Torres before. J.B. got quarters and went back to the laundromat.

---

[1] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[2] Subsequent statutory references are to the Penal Code unless stated otherwise.

J.B. went back to the convenience store to tell the store clerk that the washing machine was not working.  When he walked out of the store, Torres hit him in the face with a radio.  J.B. said, "Hey man, what's wrong with you?"  Torres took off.  The blow cut J.B.'s lip, which took two or three days to heal, during which J.B. could not eat because of the pain and swelling.

Sheriff's deputies found Torres nearby shortly after the assault and brought J.B. to where Torres was being detained; J.B. identified him.

## DISCUSSION

Torres argues the trial court erred in denying his request to represent himself under *Faretta, supra,* 422 U.S. 806.  The trial court denied the request based on an expert's report that determined he was not competent to carry out the basic tasks of defending himself, and Torres contends the report provided insufficient evidence of this incompetency.  We conclude sufficient evidence supported the trial court's decision.

## I.  Background

On December 6, 2022, the trial court granted Torres's first request to represent himself following a *Faretta* hearing.  The following month, Torres's appointed counsel on a related misdemeanor case declared a doubt as to Torres's competency to stand trial under section 1368, and criminal proceedings were suspended.  Torres was evaluated by two psychologists, Dr. Roxanne Rassti and Dr. Gary Longwith, who both determined Torres was not competent to stand trial.  The trial court found Torres not competent and ordered him committed for competency restoration treatment.

In September 2023, after Torres was restored to competency, he again asked to represent himself.  The trial court persuaded him to instead retain his appointed counsel, Kalson Chan, to facilitate resolution of his pending cases.

On May 21, 2024,[3] Torres renewed his request to represent himself, and the court set the matter for a *Faretta* hearing. At the May 24 hearing, Judge Nathan Leedy, a different judge than the one who denied Torres's prior *Faretta* motion,[4] questioned Torres and then, rather than ruling on the motion outright, ordered that an expert evaluate Torres's competence to represent himself under *People v. Johnson* (2012) 53 Cal.4th 519 (*Johnson*). The court explained that although Torres had conducted himself respectfully in court, his history of being found incompetent to stand trial and later restored, together with statements in his renewed request that struck the court as "less than grounded," left it with "mixed signals" that it wanted expert input to resolve.

The court appointed Dr. Rassti to "provide the court with an expert evaluation and opinion" as to whether Torres "is competent to represent himself in his pending criminal cases." The order stated "that this is not the same analysis involved in a Penal Code section 1368 evaluation, rather, the court must assess … 'whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel.' (*People v. Johnson* (2012) 53 Cal.4th 519, 530.)"

### *Dr. Rassti's report*

Dr. Rassti interviewed Torres on June 28, and issued her report on July 2, concluding that Torres suffers from a "severe mental illness" to the point where he "cannot carry out the basic tasks needed to present the defense without help of counsel." In addition to the interview, the sources of information Dr. Rassti relied on to form her opinion included the information filed in this case, the sheriff's office's incident report, prior section 1368 reports, a letter Torres mailed to Dr. Rassti over a year prior, and mental health records from the county jail.

---

[3] Subsequent references to dates are to dates in 2024 unless stated otherwise.

[4] Judge Brett Aldredge heard and denied Torres's earlier *Faretta* motion.

Dr. Rassti stated that Torres had mailed her a letter after she previously had evaluated him, which included "mostly disorganized speech." Dr. Rassti reproduced the following excerpt from the letter:

> "Curtsy response: I belive that ther eis a method to an important team member with out making it look like there is no trust amongs friendship. There is much to comment on. Base on lack of expinience. I do rely on anger to be aggressive by means to a better focuse. In importance to all balance to pick the best solution. Progress through all makes me belive on how wise I can become—in a way—I am struck on the short interview—and in a sense to truly evaluate some needs catching sense to all. I did appreciate the short conversation that we had. I am figuring out better gains throught proceeding and the importance into surrounding myself with the best council to learn new ways."

Mental health records showed Torres had been diagnosed with generalized anxiety disorder but was not taking prescribed psychotropic medication.

Prior section 1368 evaluation reports indicated that Torres reportedly was born and raised in California, graduated from high school, and completed some trade school toward becoming an electronic support technician. He previously worked as a truck driver, field worker, and technician, but had not worked since 2018. Since 2018, he had been homeless "on and off." Asked about his history of criminal charges related to methamphetamine use, he said, "I tried it but never used it.".

Dr. Rassti spoke with Torres for about 40 minutes. He spoke clearly and with normal rate, tone, and volume. Dr. Rassti described his attitude as "superficially cooperative," "guarded and suspicious," and "argumentative at times." He displayed an "irritable" affect. His thought process was described as "mostly circumstantial with moments of loose associations," and his thought content was described: "Vague paranoia about the intentions of others or how information will be utilized." Torres denied having hallucinations and did not appear to be responding to internal stimuli.

5.

Dr. Rassti "put forth" a diagnosis of "unspecified schizophrenia spectrum and other psychotic disorder." She observed "notable thought disorganization across two meetings one year apart, as well as vague paranoia, that suggests the presence of underlying psychiatric symptoms that are not explained by a diagnosis of generalized anxiety disorder." She stated Torres's "thought disorganization makes it very difficult to have a coherent conversation with him."

Dr. Rassti determined that Torres's thought disorganization and paranoia "impaired [his] ability to carry out the basic tasks needed to present his defense without the assistance of counsel." In addition to not wanting "to identify his current charges or describe the allegations against him, he made nonsensical statements about the status of his case." For example, he said, "I want to keep it private for reasons I do not want to discuss …a couple of charges. The first ones I got an appeal on already … already put on standby … PC 245 … PC 602 … some other … out of everything I'm trying to compress … 2011 … they used that against me." He also "made confusing statements about there being more than two cases against him, yet refused to discuss what he was referencing."

Dr. Rassti "challenged [Torres] on the need to demonstrate his ability to represent himself," and Torres became "increasingly argumentative" and threatened to sue her. He said, "I'll put a lawsuit on you. You're not doing this correctly. All I need to get is a time waiver ... They can deny me all they want. It's just a waiver." Torres could not explain the waiver he was referring to or how it would help him. He was also "unable to coherently discuss his legal strategy, as he stated it was 'to go on logic.' " He then "posed a series of nonsensical questions, such as why there was not a warrant presented to him, where the fingerprints went, and how they know they did not get the 'wrong guy.' "

6.

The report stated that Torres could not "explain why he wanted to represent himself or identify any of the tasks he would need to carry out on his behalf." Dr. Rassti asked him what he would need to do before trial, and he said, "Have a hearing and dispute it." Asked what types of motion he may need to file, he answered, "Depends on the titles I guess." And asked if he would want a jury trial or bench trial, he replied, "I had a bench trial. There was two of them: a bench trial and a jury trial. I don't trust judges."

Torres's "thought disorganization was also evidenced during his response to questions about basic legal procedure." When asked about what a not guilty plea is, he said, "It just means that you have to schedule another interview with you for your to be found guilty." Asked what a guilty plea is, he stated, "They're going to fight it. It's a plea … it's a bargain … what do you want me to say? You're asking me questions like last time. It has nothing to do with it. If you're doing to keep asking me the same questions and I already answered them the right way last time, I don't know why they keep scheduling waivers." Asked about how a "no contest" plea is different from a guilty plea, he said, "I didn't say it was different than guilty. Like anything, you have a chance to challenge this stuff if you felt you were played. Truthfully, they don't give us an angle on that."

Dr. Rassti observed that Torres "struggled to present a reality-based, coherent narrative on his own behalf due to ongoing psychiatric symptoms." Torres "failed to articulate any understanding of the basic tasks he would need to take to represent himself, or how to find this information and apply it to his case." Dr. Rassti determined that his "responses and approach to questions suggested he would struggle to calmly interact with others in the courtroom or coherently present information." Dr. Rassti ultimately concluded he could not carry out the basic tasks of presenting a defense without an attorney's help, and thus he was not competent to represent himself.

7.

### *Trial court's determination*

The trial court held a hearing after Dr. Rassti submitted her report. The court denied Torres's *Faretta* motion, finding that he was suffering from a "severe" mental illness such that he was incapable of carrying out the basic tasks necessary to present a defense. The court stated that although it was "mindful" of Torres's constitutional right to represent himself, Dr. Rassti's report "confirmed" the court's doubts as to Torres's competency to represent himself. The court believed it "would be setting [Torres] up for a task that he's incapable of completing."

## II. Law

The Sixth Amendment to the United States Constitution gives criminal defendants the right to represent themselves. (*Faretta, supra,* 422 U.S. at p. 819.) However, the United States Supreme Court has held "that states may, but need not, deny self-representation to defendants who, although competent to stand trial, lack the mental health or capacity to represent themselves at trial—persons the court referred to as 'gray-area defendants.' " (*Johnson, supra,* 53 Cal.4th at p. 523; citing *Indiana v. Edwards* (2008) 554 U.S. 164, 174 (*Edwards*).)

Following *Edwards*, "the standard that trial courts considering exercising their discretion to deny self-representation should apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*Johnson, supra,* 53 Cal.4th at p. 530.) These "basic tasks" include "organization of defense, making motions, arguing points of law, participating in *voir dire*, questioning witnesses, and addressing the court and jury." (*Edwards, supra,* 554 U.S. at pp. 175–176; citing *McKaskle v. Wiggins* (1984) 465 U.S. 168, 174, 178–179 (*McKaskle*).)

"Trial courts must apply this standard cautiously," however, as a defendant's Sixth Amendment right to represent themselves "may not be denied lightly." (*Johnson, supra,*

8.

53 Cal.4th at p. 531.) "A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides. Rather, it may deny self-representation only in those situations where *Edwards* permits it." (*Ibid.*) A defendant's lack of legal knowledge is insufficient to deny his request for self-representation. (*People v. Silfa* (2001) 88 Cal.App.4th 1311, 1322 (*Silfa*).)

In reviewing the denial of a *Faretta* motion, "we must defer largely to the trial court's discretion." (*Johnson, supra,* 53 Cal.4th at p. 531.) "The trial court's determination regarding a defendant's competence [to represent himself] must be upheld if supported by substantial evidence." (*Ibid.*)

## III. Analysis

Substantial evidence supports the trial court's finding that Torres suffered from a severe mental illness that prevented him from carrying out the basic tasks necessary to present a defense without the assistance of counsel.

Torres contends Dr. Rassti's opinion cannot constitute substantial evidence because it was based on his inability to demonstrate legal knowledge—his unfamiliarity with the titles of motions and inability to define legal terms—rather than an assessment of his capacity to perform the tasks identified in *Edwards* and *McKaskle*. He relies on the principle that a defendant's lack of legal sophistication cannot justify denial of self-representation. We agree that a  defendant's unfamiliarity with legal terminology or procedure, standing alone, is an insufficient basis to deny a *Faretta* motion. (*Silfa, supra,* 88 Cal.App.4th at p. 1322.) But that is not what this record shows.

Dr. Rassti's report does not describe a defendant who simply could not define a legal term or identify a motion by name. It describes a defendant whose disorganized thought process prevented him from communicating coherently about any subject, legal or otherwise. The letter Torres sent Dr. Rassti more than a year before the interview,

9.

written outside an evaluative setting and on a subject of his choosing, was, in Dr. Rassti's words, "mostly disorganized speech." When Dr. Rassti asked Torres the open-ended, nontechnical question of why he wanted to represent himself, a question requiring no legal knowledge whatsoever, he could not answer it. He gave "confusing statements" about how many cases were pending against him while refusing to explain what he meant and posed a series of "nonsensical" questions about warrants, fingerprints, and whether the police had the "wrong guy." None of this reflects a knowledge deficit; it reflects, as Dr. Rassti concluded, an inability to "present a reality-based, coherent narrative."

This distinction matters because the basic tasks *Edwards* and *McKaskle* identify—organizing a defense, making motions, arguing points of law, questioning witnesses, and addressing the court and jury—all require the ability to communicate coherently. (*Edwards, supra,* 554 U.S. at pp. 175–176; *McKaskle, supra,* 465 U.S. at pp. 174, 178–179.) A defendant who exhibits "thought disorganization" to the degree that "coherent conversation" with him is "very difficult," and who cannot explain why he wants to represent himself or what has happened in his own case, lacks the baseline ability the "basic tasks" standard is designed to protect.

Torres's responses to Dr. Rassti's questions about the differences between a guilty, not guilty, and no contest plea are noteworthy. Those responses were not simply incorrect but veered off into accusing Dr. Rassti of "asking me question[s] like last time" and insisting "it has nothing to do with it." This is consistent with the disorganized thinking Dr. Rassti observed, not with a defendant who merely needs to look up an unfamiliar term.

Torres points to the portion of his interview with Dr. Rassti where he said he would need to "[h]ave a hearing and dispute it," as well as to the court's observation that he had behaved respectfully in the courtroom, as evidence he retained the requisite capacity. Neither compels a different result under the substantial evidence standard.

10.

First, that statement, though facially responsive, did not actually answer the question posed, which asked for what steps he would need to take before trial. And once again, the problem with this statement was not that it revealed a lack of legal knowledge, but that it showed an inability to communicate coherently. Second, while erratic courtroom behavior may be evidence of inability to organize and present a defense, calm courtroom behavior is not necessarily evidence of the opposite. Indeed, a defendant may be nondisruptive and still lack the capacity to organize and present a defense. The trial court, which had observed Torres across multiple proceedings and had itself flagged "mixed signals" warranting expert evaluation, was entitled to credit Dr. Rassti's considered opinion over this isolated indicator.

Substantial evidence supported the trial court's determination that Torres suffered from a severe mental illness that prevented him from carrying out the basic tasks needed to present a defense without the assistance of counsel. The trial court thus did not err in denying Torres's *Faretta* motion.

## DISPOSITION

The judgment is affirmed.